## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **NETWORK PROTECTION SCIENCES, LLC** | § § § | |
| **vs.** | § § | |
| | § | **CASE NO. 2:10-CV-224-JRG** |
| **JUNIPER NETWORKS, INC., ET AL.** | § | |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

Pending before the court is defendants Juniper Networks, Inc. ("Juniper"), Fortinet, Inc. ("Fortinet"), WatchGuard Technologies, Inc. ("WatchGuard"), SonicWALL, Inc. ("SonicWALL"), and Deep Nines, Inc.'s ("Deep Nines") (collectively, "Defendants") motion to transfer venue (Dkt. No. 54).  Defendants contend that the Northern District of California is a more convenient forum than the Eastern District of Texas and seeks to transfer venue pursuant to 28 U.S.C. § 1404(a).  The court, having considered the venue motion and the arguments of counsel, GRANTS Defendant's motion to transfer venue because the balance of the "private" and "public" *forum non conveniens* factors demonstrates that the transferee venue is "clearly more convenient" than the venue chosen by plaintiff Network Protection Sciences, LLC ("NPS" or "Plaintiff").  *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

## II.      FACTUAL AND PROCEDURAL BACKGROUND

NPS filed its complaint on July 6, 2010, alleging that Defendants infringed U.S. Patent No. 5,623,601 ("the '601 Patent") entitled "Apparatus and Method for providing a Secure Gateway for Communication and Data Exchanges between Networks," with Hung T. Vu named as the sole inventor.  In its original complaint, NPS alleges that it is a Texas Limited Liability Company, having an address in Longview, Texas.  NPS has only one managing member, Unifi Scientific Advances, Inc. ("Unifi").  Both NPS and Unifi were incorporated and registered as Texas Limited Liability Companies shortly before this case was filed – Unifi on January 11, 2010, and NPS on April 6, 2010.  Unifi's two managers, Rakesh Ramde (who is also the President of NPS) and Wilfred Lam both reside in the Northern District of California.

Defendant Juniper is a Delaware corporation with its principal place of business in Sunnyvale, California (within the Northern District of California).  Defendant Fortinet is also a Delaware corporation with its principal place of business in Sunnyvale, California.  Defendant SonicWALL is a Delaware corporation with its principal place of business in San Jose, California (also within the Northern District of California).  Defendant WatchGuard is a Washington corporation and is headquartered in Seattle, Washington.

Defendant Deep Nines is a Delaware corporation, having an address at 14643 Dallas Parkway, Suite 150, Dallas, TX 75254 (within the Northern District of Texas).[1]  The majority of the business and technology assets of Deep Nines, however, were purchased by Netsweeper, Inc. ("Netsweeper") and another company on February 2, 2011.  Shortly after the asset acquisition, Deep Nines ceased active business operations but continued to defend certain claims litigation.

---

[1]      Plaintiff argues that perhaps Deep Nines in actually located in Plano, Texas because one of its counsel stated as such during voir dire in an unrelated litigation.  Given that Deep Nines's address states that it is located in Dallas, Texas, the court rejects Plaintiff's argument.

Netsweeper is a Canadian company, but, according to Deep Nine's former Vice President, Netsweeper took over Deep Nine's Dallas, Texas office for a short period of time after the acquisition and then moved to a location roughly one mile away, presumably still in Dallas, Texas.

Defendants collectively filed this motion to transfer venue on January 13, 2011, arguing that most of the parties and relevant witnesses and evidence in this case are located in the Northern District of California. In contrast, Defendants argue that no Defendant is incorporated or headquartered in the Eastern District of Texas and, despite having recently created an office in the Eastern District of Texas, even the key personnel of Plaintiff are still located in California. As such, Defendants urge the court to transfer this case to the Northern District of California for the convenience of the parties and witnesses and in the interest of justice.

## III.   LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Id.* In

making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV.   ANALYSIS

### A.   Proper Venue

As a threshold matter, the court must determine if Plaintiff's claim could have originally been filed in the Northern District of California. The parties' sole dispute with regard to this factor is whether WatchGuard is subject to personal jurisdiction in the Northern District of California. Because the California long-arm statute is co-extensive with the limits of federal due process, the personal jurisdiction inquiry here collapses into the single question of whether the exercise of jurisdiction comports with due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1997). The inquiry is thus whether WatchGuard has the requisite "minimum contacts" with California. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

WatchGuard has submitted an affidavit stating that its accused products were designed and developed in part in Tustin, California.  *See* Dkt. No. 54-8.  This affidavit also states that WatchGuard employs approximately fifteen people in California.  *Id.*  Furthermore, WatchGuard has submitted a second affidavit detailing the resellers of its accused products that are located in the Northern District of California.  *See* Dkt. No. 74-7.  Considering this, the court agrees with Defendants that WatchGuard's contacts with California – in particular its sales of accused products in the Northern District of California – satisfy the requisite "minimum contacts" test for personal jurisdiction.  *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (personal jurisdiction exists over defendant who purposefully ships accused products into forum.).  Accordingly, the court concludes that the threshold question is satisfied in this case.

### B.     Private Interest Factors

#### i.     Relative Ease of Access to Sources of Proof

The relative ease of access to sources of proof is the first "private" interest factor to consider.  Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor.  *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321.  Indeed, the Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases.  *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

Defendants argue that the most relevant documents for Juniper, Fortinet, and SonicWALL are located at their headquarters in the Northern District of California.  For

instance, defendants SonicWALL and Fortinet attest that their accused products were developed in Northern California and that all decisions regarding marketing, sales, and pricing of the accused products have occurred predominantly in the Northern District of California. Defendants further contend that the majority of Deep Nines's relevant documents are located at its former research and development and business development headquarters in the Northern District of California. And, with regard to WatchGuard, Defendants argue that its relevant documents are located at its headquarters in Seattle, Washington or at its Tustin, California office, both of which are significantly closer to the Northern District of California. Finally, Defendants contend that the source code for the accused products is maintained at the Defendants' respective offices in the Northern District of California (for Juniper, Fortinet, SonicWALL, and Deep Nines) or in Seattle, Washington (for WatchGuard). As such, Defendants urge the court to conclude that this factor weighs in favor of transfer to the Northern District of California.

In response, Plaintiff argues that all of its relevant documents are located at its headquarters in Longview, Texas. The Federal Circuit has made clear that recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010). On the other hand, a recent case in this District observed that the plaintiff's presence was not ephemeral or recent, and thus entitled to some weight, when the plaintiff had incorporated in Texas four months before filing suit and also two principles resided in Texas. *See Novelpoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229-JDL, 2010 WL 5068146, at *5 (E.D. Tex. Dec. 6, 2010).

Here, Plaintiff incorporated in Texas approximately 90 days before filing suit.[2]  Furthermore,

Plaintiffs have identified one employee working in their Longview office – a Mr. Greg Cuke,

who is a sales and technical consultant and director of business development.  Even giving

Plaintiff's Texas presence weight, there is no indication that Plaintiff's documents in Texas are

substantial enough, whether in terms of volume or importance, to counter Juniper, Fortinet,

SonicWALL, and Deep Nines' documents in California.

Plaintiff further argues that because there are allegation of indirect infringement at issue

in this case, the location of defendant Juniper's customers must be considered in the § 1404(a)

analysis.  Specifically, Plaintiff contends that three of Juniper's largest customers are located in

Texas (AT&T, Nokia-Siemens Networks B.V., and Dell) and, therefore, the relevant documents

of these customers will surely be located in Texas.  Plaintiff, however, fails to provide evidence

that the Texas campuses of these customers house any evidence relevant to the alleged indirect

infringement of the patent-in-suit.  Indeed, defendant Juniper has presented an affidavit

indicating that evidence relevant to Plaintiff's indirect infringement claims that is within the

possession of third-party AT&T will most likely be housed in AT&T's Middletown, New Jersey

facility.  *See* Dkt. No. 74-8.  A proper showing that a parties' downstream customers have

relevant witnesses and documents in or near the forum at issue is certainly a fact to be weighed

in a § 1404(a) analysis.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263,

1274-75 (Fed. Cir. 2004) ("A defendant's liability for indirect infringement must relate to the

identified instances of direct infringement.  Plaintiffs who identify individual acts of direct

infringement must restrict their theories of vicarious liability … to *the identified act*.) (emphasis

---

[2] Additionally, Plaintiff's only managing member, Unifi, was incorporated in Texas an additional approximately 90 days before Plaintiff.  This fact makes Plaintiff's appearance in Texas less ephemeral.

added);  *see also ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (patent owner did not prove *specific instances of direct infringement* or that accused device necessarily infringed the patent-in-suit and thus the jury verdict of induced infringement could not be sustained) (emphasis added).   In this case, however, Plaintiff has failed to specifically identify even one employee of Juniper's Texas based customers that is likely to have *relevant information* and that is located in or near the Eastern District of Texas.   Accordingly, given the speculative nature of Plaintiff's contention that evidence relevant to indirect infringement will be located at the Texas facilities of Juniper's customers, the Texas location of these facilities in not entitled to significant weight.

Finally, Plaintiff identifies a litany of current and former employees of Defendants that reside in Texas, some of them within the Eastern District of Texas.   Plaintiff argues that these witnesses will have relevant and material knowledge regarding this litigation.   Defendants, however, deny that any of these witnesses have unique knowledge.   Even assuming that the Texas-based witnesses identified by Plaintiff had relevant information, Defendants have identified a greater number of witnesses with relevant information that reside in or near the Northern District of California or in Seattle, Washington.   If this case is transferred to the Northern District of California, participation in the lawsuit will be substantially more convenient for the witnesses identified by Defendants.   Likewise, transportation of relevant documents in the possession and control of these witnesses will be more convenient if the case is transferred.[3]

On balance, although there are likely relevant documents and witnesses located in Texas, the court concludes that a greater amount of the sources of proof relevant to this lawsuit are located in or adjacent to the Northern District of California.  *See In re Acer America Corp.*, 626

---

[3]      Witnesses or documents travelling from Seattle, Washington would have to travel an additional 1,508 miles to reach Marshall, Texas, as opposed to San Francisco, California.

F.3d 1252, 1255 (Fed. Cir. 2010).  As such, this factor somewhat weighs in favor of transfer to the Northern District of California.

<em>ii.      Availability of Compulsory Process</em>

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses.  A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.  *Volkswagen II*, 545 F.3d at 316.  Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse.  *Id.*

Neither party specifically identifies any third-party witnesses over which this court would have absolute subpoena power.  Defendants, however, note that Deep Nines has sold its assets, including its former facility in the Northern District of California where the accused products were alleged to have been designed.  As a result of the sale, Deep Nines has attested that it no longer controls at least nine (9) former employees that have knowledge of the specific technological matters relating to the products likely at issue in this lawsuit.  The last known addresses of each of these employees was in Northern California.  Given that Deep Nines former facility was in San Jose, California, it is reasonable to assume that at least some of these individuals reside within 100 miles of the Northern District's courthouses and, therefore, will be subject to the absolute subpoena power of the Northern District of California.

Plaintiff has provided the court with no evidence that any relevant third-party witnesses are located within the absolute subpoena power of this court.[4]  As such, the court concludes that

---

[4]      Plaintiff again relies on the fact that Defendants have resellers and customers located in Texas to argue that transfer is not warranted.  Plaintiff, however, fails to identify even one employee or former employee of those companies that resides within 100 miles of this court and might have information relevant to this lawsuit.  As such, the court rejects Plaintiff's arguments

this factor weighs somewhat in favor of transfer.  *See Acer America Corp.*, 626 F.3d at 1255.

   *iii.*  *Cost of Attendance for Willing Witnesses*

  Next, the court must weigh the cost for witnesses to travel and attend trial in the Eastern

District of Texas versus the Northern District of California.  "The convenience of the witnesses

is probably the single most important factor in a transfer analysis."  *In re Genentech, Inc.*, 556

F.3d at 1342.  The Fifth Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the
> additional distance to be traveled.  Additional distance means additional travel
> time; additional travel time increases the probability for meal and lodging
> expenses; and additional travel time with overnight stays increases the time which
> these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205.  Although the court must consider the convenience of both the

party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more

important factor and is accorded greater weight in a transfer of venue analysis."  *Mohamed v.

Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring

courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*,

639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

  Here, as noted above, a significant number of the party witnesses reside in the Northern

District of California.  Specifically, nearly all of Juniper's, Fortinet's, and SonicWALL's

management and technical witnesses reside in the Northern District of California, where the

companies are headquartered.  Similarly, NPS's principals reside in the Northern District of

California.  Further, it would be more convenient and inexpensive for WatchGuard to bring its

witnesses to the Northern District of California from Seattle or Tustin, California, than to the

Eastern District of Texas, which is approximately 1,500 miles farther from Seattle than Northern

---

that the *mere presence* of these companies in Texas supports Plaintiff's argument that the
"availability of compulsory process" factor weighs against transfer.

California.  Finally, with regard to non-party witnesses, it will be substantially more convenient for the previous employees of Deep Nines that reside in Northern California to attend trial in the Northern District of California.

The number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant information residing in Northern California.  Accordingly, the court concludes that this factor weighs in favor of transfer.

### iv.   Other Practical Problems

Plaintiff argues that this factor weighs against transfer because it is more expensive to litigate a lawsuit in the Northern District of California.  Plaintiff's argument is, however, speculative at best.  As such, the court finds this factor to be neutral.

### B.   Public Interest Factors

### i.   Court Congestion

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved.  *Genentech*, 566 F.3d at 1347.  This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors."  *Id.* Here, Plaintiff has presented evidence demonstrating that transfer to the Northern District of California might increase the time to trial.  Given the speculative nature of this factor, however, the court finds it to be neutral.

### ii.   Local Interest

The court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the

litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).  Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

In this case, the residents of the Northern District of California have a particularized interest in the subject matter of this lawsuit because three out of the five Defendants are headquartered there.  These Defendants developed the allegedly infringing products in the Northern District of California and collectively employ thousands of people residing in California.  Furthermore, Deep Nines developed the products likely to be at issue in this lawsuit in the Northern District of California and previously employed numerous individuals residing in California.  Even considering Plaintiff's small and fairly recent operations in Texas, the court concludes that the "local interest" factor weighs in favor of transfer.

### iii.    *Familiarity with the Governing Law*

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203.  Both the Northern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral.  *See In re TS Tech*, 551 F.3d at 1320-21.

### iv.    *Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

## V.    CONCLUSION

Considering all of the "private" and "public" interest factors, Defendants have shown that the Northern District of California is "clearly more convenient" than the Eastern District of Texas.  Four of the § 1404(a) factors weigh in favor of transfer, and the rest are neutral or do not

apply.   None of the factors weigh against transfer.   As such, Defendants' motion to transfer venue is GRANTED.

**So ORDERED and SIGNED this 23rd day of January, 2012.**


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE